UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ROBERT CONLON AND BETSY CONLON, as personal representatives of the Estate of Michael Conlon,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CITY OF NEWTON, et al.,**<br><br>**Defendants.** | **Civil Action No. 23-10026-FDS** |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR THE COURT TO RECOGNIZE THAT THE FIRST CIRCUIT'S DECISION AFFIRMED THE DISMISSAL OF ALL CLAIMS AGAINST CAPTAINS DENNIS DOWLING AND CHRISTOPHER MARZILLI**

**SAYLOR, J.**

This is a civil rights action alleging the use of excessive force by Newton police officers. The lawsuit arises out of a tragic encounter with Michael Conlon, who was experiencing a mental-health crisis, that resulted in his death. Plaintiffs, Michael's parents, have asserted several federal and state-law claims against the officers and the City of Newton.

On June 21, 2024, the Court dismissed the complaint in its entirety on a variety of grounds for failure to state a claim upon which relief can be granted. On October 22, 2025, the First Circuit affirmed the dismissal as to Counts 2-10, but vacated the dismissal as to Count 1, which is a claim asserted under 42 U.S.C. § 1983 for excessive use of force in violation of the Fourth Amendment.

Defendants have now moved for an order that the Court "recognize" that all claims,

including Count 1, have been dismissed as to defendants Dennis Dowling and Christopher Marzilli, two of the officers involved in the incident. For the reasons provided below, the motion will be denied.

## I. **Background**

Except as otherwise noted, the following facts are set forth as alleged in the first amended complaint ("FAC").

### A. **Factual Background**

On January 5, 2021, Newton police officer Zachary Raymond responded to the scene of a suspected armed robbery at a candy store. (FAC ¶¶ 50-51). He encountered Michael Conlon, who was holding a "small kitchen knife." (*Id.* ¶ 52). Conlon fled into his apartment building next door. (*Id.* ¶ 53). With Raymond in pursuit, Conlon reached the top of the stairs, where he held the knife to his throat and threatened to harm himself if the officer came any closer. (*Id.* ¶¶ 54-55). In the meantime, several other officers arrived, including Dennis Dowling, Christopher Marzilli, Francis Scaltreto, Richard Benes, and Glenn Chisholm. (*Id.* ¶¶ 58-62).

Conlon suffered from significant mental illness, with a diagnosis of major depression, bipolar disorder, and schizoaffective disorder. (*Id.* ¶¶ 29-30). When he encountered the police, Conlon was in a delusional state. (*Id.* ¶¶ 63, 65). A social worker was present outside, and the officers had requested a negotiator and tactical team. (*Id.* ¶¶ 68, 74).

Scaltreto was initially successful in convincing Conlon to drop the knife and a fire extinguisher that he had picked up. (*Id.* ¶¶ 93-94). After he dropped the knife, Scaltreto said there was an "opening," which was relayed by radio to Dowling by Marzilli. (*Id.* ¶ 95). Dowling ordered that a beanbag shotgun, a "less-than-lethal" weapon, be deployed to subdue Conlon, and Marzilli confirmed the order to Chisholm. (*Id.* ¶ 95-103). Chisholm then aimed a

beanbag shotgun at Conlon and pulled the trigger. (*Id.* ¶ 103). However, the weapon misfired. (*Id.* ¶ 107). Conlon, who was startled by the clicking sound produced by the weapon, picked up the knife and approached Chisholm. (*Id.* ¶¶ 107-109). Benes and Scaltreto then fatally shot Conlon. (*Id.* ¶¶ 109, 111).

**B. <u>The Parties</u>**

Robert and Betsy Conlon are Michael's parents and are the appointed representatives of his estate. (*Id.* ¶ 21).

The City of Newton is a Massachusetts municipality. (*Id.* ¶ 22). The Newton Police Department ("NPD") is an agency of the City.

Dennis Dowling, Christopher Marzilli, Glenn Chisholm, Richard Benes, and Francis Scaltreto are NPD officers. (*Id.* ¶¶ 23-27). Dowling and Marzilli are both captains; Chisholm is a sergeant; and Benes and Scaltreto are patrol officers. (*Id.*).

**C. <u>Procedural Background</u>**

Plaintiffs originally filed this suit on January 5, 2023, and subsequently filed an amended complaint on November 29, 2023.

The amended complaint asserts five claims against NPD officers Francis Scaltreto, Richard Benes, Glenn Chisholm, Dennis Dowling, and Christopher Marzilli: excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 (Count 1); violations of the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H-11I (Counts 7 and 8); and wrongful death under Mass. Gen. Laws ch. 229, § 2 (Count 9). It asserts four claims against the City of Newton: failure to train and supervise its officers in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 (Count 2); failure to accommodate a disability in violation of the ADA, 42 U.S.C. § 12132 (Count 4); failure to train in violation of the ADA, 42 U.S.C. § 12132 (Count 5); and failure to provide accommodations in violation of the

Rehabilitation Act, 29 U.S.C. § 794(a) (Count 6). The complaint also asserts a claim against all defendants for a failure to provide mental-health treatment in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 (Count 3), and a claim for common-law assault against Chisholm (Count 10).

Defendants moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6). The Court granted the motion to dismiss in its entirety. On October 22, 2025, the First Circuit affirmed the dismissal of Counts 2-10. It vacated the dismissal of Count 1 and remanded for further factual development on the excessive-force claim to determine if the officers are entitled to qualified immunity. Defendants have now moved to have the Court "recognize" that the First Circuit dismissed all claims against Dowling and Marzilli.

## II. **Analysis**

The "law of the case" doctrine "precludes relitigation of the legal issues presented in successive stages of a single case once those issues have been decided." *United States v. Vigneau*, 337 F.3d 62, 67 (1st Cir. 2003). One aspect of the doctrine is the mandate rule, under which a district court is required to "conform with the directions of the appellate court on remand." *United States v. Davila-Felix*, 763 F.3d 105, 109 (1st Cir. 2014). While "not an absolute bar to reconsideration," the mandate rule only "tolerates a modicum of residual flexibility in exceptional circumstances." *Vigneau*, 337 F.3d at 67 (citation modified). To determine the scope of an appellate court's direction, the court must "parse the operative language" of the appellate decision to determine its contours. *United States v. Genao-Sanchez*, 525 F.3d 67, 70 (1st Cir. 2008). The court is required to "implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* (quoting *United States v. Connell*, 6 F.3d 27, 30 (1st Cir. 1993)). The mandate rule thus forecloses reconsideration of matters "that were actually considered and decided by the

appellate court, or as were necessarily inferred from the disposition on appeal," while leaving the district court authority to address matters not resolved or foreclosed by the appellate court. *Kashner Davidson Sec. Corp. v. Mscisz*, 601 F.3d 19, 23–24 (1st Cir. 2010) (quoting *NLRB v. Goodless Bros. Elec. Co.*, 285 F.3d 102, 107 (1st Cir. 2002)).

Here, the First Circuit's opinion concludes with this paragraph:

> For the reasons described, we **vacate** the judgment on Plaintiffs' claims against Officer-Defendants for the use of excessive force in violation of 42 U.S.C. § 1983 (Count 1) as it relates to the fatal shooting and **remand** the matter for further proceedings on that claim. The remainder of the judgment is **affirmed.** The parties shall bear their own costs. **So ordered.**

*Conlon v. Scaltreto*, 158 F.4th 211, 226-27 (1st Cir. 2025). The term "Officer-Defendants" was defined, earlier in the opinion, to mean "Officers Scaltreto and Benes, Sergeant Chisholm, and Captains Dowling and Marzilli." *Id.* at 217.

Defendants contend that the remand does not apply to the claims against Dowling and Marzilli, who allegedly "did not use deadly force," because the court remanded only the § 1983 claim arising from the fatal shooting. (Def.'s Mem., Dkt. No. 76, ¶¶ 9-10). Defendants contend that Dowling and Marzilli's involvement was limited to earlier use of beanbag rounds, which the First Circuit expressly found was protected by qualified immunity and excluded from the surviving § 1983 claim. (*Id.* ¶¶ 17-18).

However, the mandate does not support that reading. While the First Circuit expressly limited which of the *claims* survived, the court did not similarly limit the *defendants* against whom the remaining claim could be asserted. Instead, the First Circuit expressly remanded the claim "against Officer-Defendants." *Conlon*, 158 F.4th at 226-27, 222. Again, the opinion defines "Officer-Defendants" to include "Captains Dowling and Marzilli." *Id* at 217. Thus, the remand of the § 1983 claim as to all defendants is unambiguous.

Moreover, the asserted implication that defendants Dowling and Marzilli could not be liable under § 1983 was not actually decided by the First Circuit, nor is it necessarily inferred.[1] Had the First Circuit instead wished to limit the defendants against whom the § 1983 claim applied, it could easily have done so. *See e.g.*, *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 362 (D. Me. 2012) (holding defendant outside scope of remand where the First Circuit expressly affirmed dismissal as to that particular defendant).

Accordingly, and because the First Circuit remanded Count 1 as to all defendants, including Dowling and Marzilli, they remain as defendants in this matter.

## III. Conclusion

For the foregoing reasons, defendants' Motion for the Court to Recognize that the First Circuit's Decision Affirmed the Dismissal of All Claims Against Captains Dennis Dowling and Christopher Marzilli (Dkt. No. 75) is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: October 1, 2026

[1] In the section remanding Count 1, the First Circuit refers to the "Officer-Defendants' entitlement to qualified immunity." *Id.* at 222. It emphasizes that "[t]he resolution of the precise sequence of events leading up to Conlon's death is clearly relevant to determining whether qualified immunity applies," requiring "a fuller development of the record." *Id.* That sequence involved all of the Officer-Defendants.